**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DANIEL A. HYDE, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>  Defendant. ) | Case No. CIV-05-492-M |

**REPORT AND RECOMMENDATION**

Plaintiff Daniel A. Hyde seeks judicial review of the final decision by the Defendant Commissioner denying his application for disability insurance benefits. This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"), and both parties have briefed their respective positions. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.    Procedural History**

Plaintiff filed an application for disability insurance benefits on October 28, 2002, alleging an inability to work since May 1, 2000. AR 67-69. It is undisputed that Plaintiff was last insured for disability insurance benefits on December 31, 2001. Plaintiff's Opening Brief at 1. Therefore, the relevant period for determining disability is May 1, 2000, through

December 31, 2001.[1] Plaintiff contends he was disabled before December 31, 2001, because of obesity, diabetes, hypertension, gastroesophageal reflux disease (GERD), depression, and residual problems from knee surgery. AR 78. Plaintiff's application was denied initially and on reconsideration. AR 37, 38. Subsequently, an Administrative Law Judge (ALJ) held a hearing, and after consideration of the evidence, the ALJ found that Plaintiff was not disabled on or before December 31, 2001. AR 23-32. The Appeals Council received new material from Plaintiff, but it ultimately denied Plaintiff's request for review. AR 6-9. Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.  Relevant Background

Plaintiff worked on the freight dock as a warehouse worker for Mistletoe Express from 1970 until the company went out of business in 1988. In his Work History Report, Plaintiff stated that he was required to lift up to 100 pounds. AR 100. At the hearing before the ALJ, Plaintiff testified that he was required to manually lift loads up to 80 pounds. AR 405. Thereafter, Plaintiff worked as a construction laborer. AR 101. For eight months in 1996-1997, he worked as a sorter for City Rescue Mission where he unloaded household appliances and boxes of clothing. AR 99, 102, 408-409. He worked for eighteen months at Hobby Lobby as a warehouse worker in 1999-2000 and left because he had a heatstroke. AR 99, 406. For one month in 2002, Plaintiff worked two hours per day, five days per week picking up trash and sorting plumbing fixtures and parts. AR 99, 105.

---

[1]Plaintiff was subsequently found to be disabled and was awarded supplemental security income benefits after the date he was last insured for disability benefits.

A vocational expert (VE) testified that Plaintiff had no transferable skills from his past relevant work. AR 420. The VE further testified that Plaintiff's past relevant work was performed at the heavy exertional level and as unskilled work, even though the Dictionary of Occupational Titles (DOT) classifies the warehouse worker job as medium, unskilled work and the sorter job as light, skilled work. AR 422.

Plaintiff has a history of mental problems including anxiety and depression. In January of 1995, he was hospitalized by court order for twenty-eight days with a diagnosis of major depressive episode, moderate. AR 13-22, 328-385.

There are few medical records reflecting Plaintiff's physical and mental health during the relevant period between the alleged onset date (May 1, 2000) and the date Plaintiff was last insured for disability benefits (December 31, 2001).[2] On June 12, 2000, Plaintiff was treated for pharyngitis and sinus congestion. Dr. S. Dean Brown prescribed Claritin, Duratuss-G and Amoxil. AR 137-139. On August 4, 2000, Plaintiff was seen for hypertension and for a biopsy of a skin lesion on his right temple. AR 139-140.

On April 2, 2001, Plaintiff was seen at the Bethany Medical Clinic. The record indicates that Plaintiff had had a skin cancer removed from his right temple four months earlier and that he had undergone knee surgery in 1968. The record states that Plaintiff had gained 100 pounds during the last year. He was diagnosed with severe hypertension and with depression for which he was prescribed Clonadine and Paxil respectively. AR 257. On

---

[2]Plaintiff attributes the paucity of medical records to the fact that he was not employed and that, therefore, he could not afford the medical treatment he needed. Plaintiff's Brief at 7.

April 13, 2001, Plaintiff reported suffering from heartburn, and Zantac was added to his medications. Paxil was discontinued because Plaintiff reported that it made him sleepy. AR 253. A medical record dated April 16, 2001, states that Plaintiff's gastrointestinal system was abnormal. AR 252. The report of a blood test dated April 18, 2001, shows high blood sugar levels. Plaintiff was prescribed Glucotrol. AR 251. On April 25, 2001, Plaintiff's blood sugar levels were still elevated. Plaintiff had not gotten the prescription for Glucotrol filled because of the cost of the medication. AR 250. On May 16, 2001, Plaintiff complained of a sore throat for which an antibiotic was prescribed. AR 248. On August 27, 2001, Plaintiff saw Dr. I. Jackson for refills of his medication and for blood tests, most of which were normal. AR 149-151.

### III.     The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520. He first determined that Plaintiff had not engaged in substantial gainful activity since August of 2000. AR 28, 31.[3]

At step two, the ALJ determined that during the relevant period Plaintiff suffered from impairments including obesity, diabetes, high blood pressure, episodes of GERD, depression and history of knee surgery. The ALJ determined that the combined effect of these

---

[3]In view of his ultimate decision that Plaintiff was not disabled during the relevant period, the ALJ did not further develop the record at step one. AR 28, 31. It does not appear, however, that the limited work Plaintiff did after May 1, 2000, would qualify as substantial gainful activity.

impairments had caused Plaintiff "some vocationally relevant limitations" and were therefore severe. AR 28, 31.

At step three, the ALJ found that during the relevant period Plaintiff had no impairment or combination of impairments that met or equaled the criteria of any listed impairment described in the regulations. AR 28-29, 31.

At step four, the ALJ determined that during the relevant period Plaintiff had the residual functional capacity (RFC) to perform a full range of light work as well as sedentary work. AR 30, 31. Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could have performed his past relevant work as a Sorter on and before December 31, 2001. AR 30, 31.[4]

## IV.    Plaintiff's Claims Raised on Appeal

In Proposition I, Plaintiff claims that this case should be reversed and remanded because the decision is not supported by substantial evidence. In support of his claim, Plaintiff states that the only physical RFC contained in the record does not support a finding that he could have performed light work before December 31, 2001. Plaintiff also states that his past relevant work as Sorter would not equate to the "Sorter" job as defined in the DOT. Finally, Plaintiff contends that the ALJ's hypothetical questions to the VE did not include any of the mental limitations reflected by the medical evidence.

---

[4]The VE also identified a number of other jobs Plaintiff could have performed during the relevant period, AR 420-421, but the ALJ made no findings pertinent to step five of the sequential evaluation process, *i.e,*, whether Plaintiff could have performed other work existing in substantial numbers in the national economy. *See* AR 31.

In Proposition II, Plaintiff claims that the ALJ committed legal error by failing to fully develop the record in light of the VE's description of Plaintiff's past relevant work.

In Proposition III, Plaintiff claims that the ALJ erred in determining Plaintiff's RFC was greater than sedentary. He further challenges the second mental health evaluation performed by Dr. Sally Varghese.

**V.      Standard of Review**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether specific rules of law were followed in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172.

**VI.**    **Analysis**

    **A.**    **Substantial Evidence**

The ALJ found that before December 31, 2001, Plaintiff retained the RFC for light and sedentary work:

> The undersigned finds that on and before December 31, 2001, the claimant retained the residual functional capacity to perform the exertional demands of a full range of light and sedentary work activities. The claimant should not have been expected to lift and carry more than 20 pounds occasionally or more than 10 pounds frequently.

AR 30. Plaintiff contends that the ALJ's RFC is not supported by substantial evidence. His point is well-taken. On March 3, 2003, just over one year after Plaintiff was last insured, a medical consultant evaluated Plaintiff to establish his physical RFC. The medical consultant noted that Plaintiff suffers from degenerative joint disease, diabetes, obesity, hypertension GERD, history of knee surgery, and depression. AR 189. The medical consultant stated that Plaintiff could lift and/or carry ten pounds occasionally and five to ten pounds frequently, that he could stand and/or walk at least 2 hours in an 8-hour workday, that he could sit for a total of about 6 hours in an 8-hour workday, and that his ability to push or pull hand and/or foot controls was limited to the same extent as his capacity for lifting and carrying. *Id.* The medical consultant stated that an X-ray of Plaintiff's left knee shows "moderate to severe degree" of degenerative joint disease. *Id.*

The medical consultant's RFC indicates that Plaintiff was able to do only sedentary work as of March 3, 2003. The medical consultant was, of course, assessing Plaintiff's RFC

as of the date of his examination of Plaintiff and did not purport to be determining Plaintiff's RFC for the period before Plaintiff's last insured date. Nevertheless, this physical RFC is the only such document in the record. The only evidence cited by the ALJ in support of his RFC findings is that of Plaintiff's self-reported daily activities which included walking for exercise, cooking simple meals, doing some laundry and other household chores, taking care of personal needs, shopping for food, reading, watching television, and attending church. The ALJ characterized these daily activities as "not inconsistent with the performance of substantial gainful activity." AR 30. These activities alone, however, are also not inconsistent with a finding that Plaintiff is disabled. As a general rule, "evidence that a claimant engages in limited activities . . . does not establish that the claimant can engage in light or sedentary work activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) (quotation omitted). *See also Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (claimant's testimony that he camped out frequently, hunted and fished, had no difficulties driving his standard-shift utility vehicle, and occasionally mowed the lawn did not establish that the claimant could engage in light or sedentary work activity).

    The ALJ addressed the fact that Plaintiff had been found disabled and awarded SSI benefits after the date Plaintiff was last insured for disability benefits. The ALJ stated that the award of SSI benefits was justified because Plaintiff's health had "worsened considerably" since December 31, 2001. AR 30. The ALJ does not, however, support his finding that Plaintiff's health had declined since December 31, 2001, with evidence from the

record. The ALJ's finding that Plaintiff became disabled sometime after December 31, 2001, is not supported by substantial evidence in the record. It is therefore recommended that this case be reversed and remanded for further proceedings.

### B. <u>Development of the Record</u>

At step four of the sequential evaluation process, the ALJ found that Plaintiff was not disabled, specifically finding that on or before December 31, 2001, Plaintiff could perform his past relevant work as a sorter. AR 30, 31. Plaintiff claims that the ALJ erred in failing to fully develop the record regarding the difference between his past relevant work as a sorter for the City Rescue Mission, as he actually performed that work, and the job of "Sorter" as it is defined in the DOT and as it is generally performed in the national economy.

Plaintiff testified that his work at the City Rescue Mission consisted of sorting household items such as clothing and household appliances. AR 408. In his Work History Report, Plaintiff stated that he "unloaded vehicles of boxes of clothing" and other items from donations. He reported having to lift as much as 100 pounds occasionally and 50 pounds frequently. AR 102. The VE testified that this job, which he identified by DOT code 222.387-054 as "Sorter," was performed by Plaintiff at the heavy exertional level. AR 419. He also testified that Plaintiff performed this job at an unskilled level, AR 419, and had gained no transferable skills from any job he had previously held. AR 420.

DOT listing 222.387-054 is identified as Sorter-Pricer. It is described as follows:

Sorts used merchandise received from donors and appraises, prices, wraps, packs, and allocates merchandise for resale in retail outlets of nonprofit

>organization and maintains related records. Discards unsalable items or sets them aside for salvage or repair. May make minor repairs on damaged merchandise. May be designated according to merchandise sorted as Book Sorter (nonprofit org.); Clothing Sorter (nonprofit org.); Jewelry Sorter (nonprofit org.); Wares Sorter (nonprofit org.).

DOT 222.387-054.  The DOT rates the exertional level for Sorter-Pricer as light.  This job has a Specific Vocational Preparation (SVP) Level of 5, which indicates that it is skilled work that would take from six months to a year to learn.[5]

An ALJ can find that a claimant is not disabled at step four of the sequential evaluation if the claimant can perform his past relevant work either as he actually performed the work in the past or as it is generally performed by employees in the national economy. *See Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1051 (10th Cir. 1993).  *See also* SSR 82-61, 1982 WL 31387 (1982).  As stated above, the VE testified that Plaintiff's job at the City Rescue Mission was performed at the heavy exertional level and at an unskilled level ("at an SVP of two").  AR 419.  The VE acknowledged that he was deviating from the DOT "based on the Claimant's testimony," and he gave his opinion as to why the job of Sorter is classified as skilled in the DOT:

>And the reason, Your Honor, that – for clarification[,] the DOT classifies that[,] and this is my interpretation[,] at a five is because that classification from the DOT would afford a person that would make repairs on some of the refrigerators, machines, or whatever they bring in[,] and for that reason, I think that's why the DOT gives that as a five.

---

[5]The Agency has explained how the skill levels outlined in 20 C.F.R. § 404.1568 correspond to the SVP numbers used in the DOT.  An SVP from 1-2 corresponds with "unskilled work" in the regulations.  An SVP of 3-4 corresponds with "semi-skilled work."  An SVP of 5-9 corresponds to "skilled work."  *See* SSR 00-4p, 2000 WL 1898704 at *3.

AR 419. Based on the VE's testimony, the ALJ found at step four of the sequential evaluation process that Plaintiff could perform his past relevant work as Sorter-Pricer, "as said job was generally performed in the national economy." AR 30.[6] But the job of Sorter, as it is performed in the national economy, requires an SVP of 5 making it skilled work, and the VE stated that Plaintiff had no transferrable skills from his past relevant work. Plaintiff could not have returned to his past relevant work as he actually performed that work because he performed that job at the heavy exertional level; the ALJ found that Plaintiff was restricted to light work. On the other hand, Plaintiff's lack of transferrable skills also means that Plaintiff could not have performed the job of Sorter as it is generally performed in the national economy.

In her Brief, the Commissioner states that because Plaintiff had worked at the Sorter job for eight months, he met the qualifications for an SVP of 5. Commissioner's Brief at 10. This reasoning does not take into account the fact that Plaintiff performed the job of Sorter at an unskilled level and therefore he could not have gained any skills necessary to perform the job as it is generally performed in the national economy. The Commissioner's decision should be reversed and remanded for further consideration of this issue.

---

[6] The VE did identify other light jobs which he believed Plaintiff could perform. The ALJ stated in his opinion that the "vocational expert also identified a significant number of other jobs within the claimant's residual functional capacity as it existed on and before December 31, 2001." AR 30. The ALJ did not, however, identify any of the additional jobs in his decision and did not make a step-five finding that Plaintiff could perform other jobs available in significant numbers in the national economy. This Court cannot fill in the blanks and review this case as a step-five decision.

### C.     Plaintiff's Mental RFC

As discussed above, the ALJ's findings regarding Plaintiff's physical RFC during the relevant period are not supported by substantial evidence in the record. Plaintiff also complains, however, that the ALJ erred in failing to reconcile the different findings on two Psychological Review Technique (PRT) forms both completed by Dr. Sally Varghese. The first of these forms states that Dr. Varghese was considering Plaintiff's mental condition from August 1, 2002, to the date the PRT form was completed, January 24, 2003. AR 173. Dr. Varghese found that at that time, Plaintiff was suffering from affective disorders that were not severe. *Id.*

The second Psychiatric Review Technique form is dated March 3, 2003, but the time period being considered was on or before December 31, 2001. AR 197-209. In this PRT, Dr. Varghese found no medically determinable impairment. AR 197. Dr. Varghese stated her opinion that the medical evidence does not support a finding of a medically determinable impairment as of that date. AR 209. As the two PRT assessments evaluate Plaintiff's mental status during two different periods, the differing results are not inconsistent. The Plaintiff has failed to identify any basis on which to determine that the ALJ erred in omitting mental limitations from Plaintiff's RFC for the relevant period.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by July __13th__, 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __23rd__ day of June, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE